```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/19/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                :

UNITED STATES OF AMERICA
                :

     - v. -
                :      **INFORMATION**

NINO COPPERO DEL VALLE,
                :    15 CRIM 178

     Defendant.
                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### COUNT ONE
**(Conspiracy to Commit Securities Fraud,
Fraud in Connection with a Tender Offer, and Money Laundering)**

    The United States Attorney charges:

### Relevant Entities and Individuals

    1.  At all times relevant to this Information, HudBay Minerals Inc. ("HudBay") was a mining company headquartered in Toronto, Canada.  HudBay's securities traded under the symbol "HBM" on the New York Stock Exchange ("NYSE").  HudBay's securities also traded on the Toronto Stock Exchange ("TSX").  HudBay maintained mining operations and employees in Peru.

    2.  At all times relevant to this Information, Augusta Resource Corp. ("Augusta") was a mineral resource company headquartered in Vancouver, Canada.  Augusta's securities traded under the symbol "AZC" on what was formerly called the American Stock Exchange (the "NYSE MKT"), which is located in Manhattan, New York.  Augusta's securities also traded on the TSX.

3.    At all times relevant to this Information, La Encantada Investments, Inc. ("La Encantada") was a corporate entity formed under the laws of the British Virgin Islands that maintained a brokerage account (the "La Encantada Brokerage Account") with a broker-dealer with offices in Lima, Peru (the "Introducing Broker").  Securities transactions for the La Encantada Brokerage Account were cleared through a United States-based clearing broker (the "Clearing Broker").

4.    At all times relevant to this Information, NINO COPPERO DEL VALLE, the defendant, was an employee of HudBay based in Lima, Peru.  COPPERO served in the position of Director for Corporate Affairs and Social Responsibility.  As an insider at HudBay, COPPERO owed a duty of trust and confidence to HudBay.

5.    At all times relevant to this Information, CC-1, a co-conspirator not named as a defendant herein, was an attorney who resided in or near Lima, Peru.  CC-1 was a close friend of NINO COPPERO DEL VALLE, the defendant, and was the beneficial owner of, and had trading authority over, the La Encantada Brokerage Account.  CC-1 had also been retained on multiple occasions by HudBay in Peru as an external counsel.

## The Insider Trading Scheme

6.    From at least in or about January 2014 through in or about July 2014, NINO COPPERO DEL VALLE, the defendant, CC-1,

- 2 -

and others known and unknown, participated in an insider trading scheme in which they used material, non-public information ("MNPI") that COPPERO acquired as part of his employment at HudBay to make and cause to be made profitable securities trades in the La Encantada Brokerage Account for the benefit of COPPERO and CC-1.

7.     Specifically, by virtue of his position at HudBay, NINO COPPERO DEL VALLE, the defendant, came to learn of HudBay's imminent plans to acquire Augusta, information that constituted MNPI. COPPERO, in violation of his duty of trust and confidence to HudBay and in violation of HudBay confidentiality and insider trading policies, then provided that information to CC-1.

8.     On or about January 30, 2014, CC-1 began to purchase shares of Augusta in the La Encantada Brokerage Account. Between January 30 and January 31, 2014, the La Encantada Brokerage Account purchased 55,000 shares of Augusta for a total purchase price of approximately $99,593, almost the total value of the La Encantada Brokerage Account, which had previously been funded by CC-1.

9.     On or about February 5, 2014, after providing the MNPI to CC-1, NINO COPPERO DEL VALLE, the defendant, wired approximately $100,000, essentially his entire life savings, from Peru to an account held at Bank of New York Mellon ("BNY")

in the United States by the Clearing Broker for deposit in the La Encantada Brokerage Account.

10. Between on or about February 6, 2014 and on or about February 7, 2014, NINO COPPERO DEL VALLE, the defendant, and CC-1 used the entire amount of funds that COPPERO had transferred into the La Encantanda Brokerage Account to purchase additional shares of Augusta. Specifically, between February 6 and 7, 2014, an additional 49,000 shares of Augusta were purchased in the La Encantada Brokerage Account for a total purchase price of approximately $99,861.

11. In sum, between on or about January 30, 2014 and on or about February 7, 2014, NINO COPPERO DEL VALLE, the defendant, and CC-1 used the La Encantada Brokerage Account to purchase a total of 104,200 shares of Augusta for an aggregate price of approximately $199,453.

12. On February 9, 2014, a Sunday, HudBay issued a press release announcing its intention to purchase all outstanding shares of Augusta. By market close on February 10, 2014, Augusta shares on the NYSE MKT were trading at $2.95, an increase of over 65 cents per share, or approximately 28 percent, since market close on the previous trading day, which was prior to HudBay's announcement.

13. Between on or about February 10, 2014 and on or about February 24, 2014, the La Encantada Brokerage Account sold all

104,200 shares of Augusta that it held for an aggregate total of approximately $312,114.  As set forth above, these shares were purchased for approximately $199,453.  These sales accordingly resulted in a gross profit for the La Encantada Brokerage Account of approximately $112,661.

14.  All purchases and sales of Augusta shares in the La Encantada Brokerage Account took place through over-the-counter transactions with BNY Mellon Capital Markets, LLC ("BNYCM"), a Manhattan based broker-dealer and subsidiary of BNY, acting as a market maker.

15.  On or about April 23, 2014, NINO COPPERO DEL VALLE, the defendant, and CC-1 caused the Clearing Broker to transfer $100,000 out of the La Encantada Brokerage Account to an account at a Peruvian bank ("Peruvian Bank 1") held in the name of COPPERO (the "Coppero Account").

16.  On or about July 4, 2014, NINO COPPERO DEL VALLE, the defendant, and CC-1 caused the Clearing Broker to transfer $50,000, representing most of COPPERO's share of the proceeds from the insider trading scheme, from the La Encantada Brokerage Account to an account at another Peruvian bank ("Peruvian Bank 2") held in the name of persons affiliated with COPPERO.

17.  Between on or about February 14 2014 and on or about July 1, 2014, CC-1 caused the Clearing Broker to transfer approximately $52,000, representing CC-1's share of the proceeds

- 5 -

of the insider trading scheme, out of the La Encantada Brokerage Account to an account at Peruvian Bank 1 held by CC-1.

## Statutory Allegation

### The Conspiracy

18. From at least in or about January 2014 through in or about July 2014, in the Southern District of New York and elsewhere, NINO COPPERO DEL VALLE, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit offenses against the United States, to wit, securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; fraud in connection with a tender offer, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d); and money laundering, in violation of Title 18, United States Code, Section 1956.

### Objects of the Conspiracy

19. It was a part and an object of the conspiracy that NINO COPPERO DEL VALLE, the defendant, CC-1, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale

- 6 -

of securities, would and did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing devices, schemes, and artifices to defraud; (b) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons; and (c) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

20. It was a further part and an object of the conspiracy that NINO COPPERO DEL VALLE, the defendant, CC-1, and others known and unknown, willfully and knowingly would and did engage in fraudulent, deceptive, and manipulative acts and practices in connection with a tender offer, in that after the offering person, HudBay, had taken substantial steps to commence a tender offer of Augusta securities, COPPERO, while in possession of material information relating to such tender offer which information COPPERO knew and had reason to know was non-public and which COPPERO knew and had reason to know had been acquired directly and indirectly from HudBay, and an officer, director, partner, and employee and other person acting on behalf of

HudBay, would and did purchase and sell and cause to be purchased and sold such securities, and securities convertible into and exchangeable for any such securities, and an option and right to obtain and to dispose of any of the foregoing securities, without within a reasonable time prior to such purchase and sale publicly disclosing such information and its source by press release and otherwise, in violation of Title 15, United States Code, Sections 78n(e) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

21.    It was a further part and an object of the conspiracy that NINO COPPERO DEL VALLE, the defendant, CC-1, and others known and unknown, willfully and knowingly, would and did transport, transmit, and transfer and attempt to transport, transmit, and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is fraud in connection with the purchase and sale of securities, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

## Overt Acts

22.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others,

- 8 -

were committed in the Southern District of New York and
elsewhere:

a.      On or about January 30, 2014, CC-1 caused the La
Encantada Brokerage Account to purchase shares of Augusta from a
Manhattan-based broker-dealer acting as market maker.

b.      On or about February 5, 2014, NINO COPPERO DEL
VALLE, the defendant, using instructions provided to him by CC-
1, caused $100,000 to be wired from an account in Peru to an
account at BNY for the benefit of the La Encantada Brokerage
Account.

c.      On or about February 6, 2014, COPPERO and CC-1
caused the La Encantada Brokerage Account to purchase additional
Augusta shares from a Manhattan-based broker-dealer, using the
funds that COPPERO had wired to the La Encantada Brokerage
Account.

d.      On or about February 10, 2014, COPPERO and CC-1
caused the La Encantada Brokerage Account to sell shares of
Augusta to a Manhattan-based broker-dealer.

e.      On or about July 4, 2014, COPPERO and
CC-1 caused $50,000 to be transferred from the La Encantada
Brokerage Account, through a financial institution in Manhattan,
New York, to an account in Peru held in the name of persons
affiliated with COPPERO.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Securities Fraud)

The United States Attorney further charges:

23. The allegations contained in paragraphs 1 through 17 and paragraph 22 are repeated and realleged as if fully set forth herein.

24. Between in or about January 2014 and in or about July 2014, in the Southern District of New York and elsewhere, NINO COPPERO DEL VALLE, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, used and employed manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, by: (a) employing devices, schemes, and artifices to defraud; (b) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons; and (c) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to wit, on the basis of material, non-public information that COPPERO obtained as part of his employment, COPPERO executed and

- 10 -

caused to be executed in the La Encantada Brokerage Account

purchases of shares of Augusta.

> (Title 15, United States Code, Sections 78j(b) & 78ff;
> Title 17, Code of Federal Regulations, Sections 240.10b-5 &
> 240.10b5-2; and Title 18, United States Code, Section 2.)

### COUNT THREE
### (Money Laundering)

The United States Attorney further charges:

25.  The allegations contained in paragraphs 1 through 17

and paragraph 22 are repeated and realleged as if fully set

forth herein.

26.  On or about February 5, 2014, in the Southern District

of New York and elsewhere, NINO COPPERO DEL VALLE, the

defendant, willfully and knowingly transported, transmited, and

transferred, and attempted to transport, transmit, and transfer

monetary instruments and funds from a place in the United States

to and through a place outside the United States and to a place

in the United States from and through a place outside the United

States, with the intent to promote the carrying on of specified

unlawful activity, that is, an offense involving fraud in the

sale of securities; to wit, to carry out an insider trading

scheme, COPPERO caused approximately $100,000 to be transferred

from Peru to the United States for the purposes of executing

purchases and sales of securities based on MNPI.

> (Title 18, United States Code, Sections 1956(a)(2)(A) and 2.)

## COUNT FOUR
### (Conspiracy To Obstruct Justice)

The United States Attorney further charges:

27.   The allegations contained in paragraphs 1 through 17 and paragraph 22 are repeated and realleged as if fully set forth herein.

### The Scheme To Obstruct Justice

28.   ·On or about September 30, 2014, NINO COPPERO DEL VALLE, the defendant, was approached by Special Agents of the Federal Bureau of Investigation (the "FBI") in Manhattan, New York.  An FBI Special Agent asked COPPERO if he would be willing to answer questions about CC-1 and trading in the stock of Augusta.  COPPERO indicated that he wanted to consult an attorney before speaking further with the Special Agent.  During the encounter with the FBI, COPPERO was also served with a federal grand jury subpoena, requiring him to appear the following day before a federal grand jury sitting in the Southern District of New York and testify and give evidence in regard to alleged violations of criminal securities fraud statutes.  Attached to the subpoena was a document stating (1) that a grand jury was conducting an investigation of possible violations of federal criminal laws, including securities fraud, and (2) that COPPERO was a target of this investigation.

29.   That evening, NINO COPPERO DEL VALLE, the defendant, spoke with CC-1 through an internet-based communication platform

commonly known as Skype. During the call, COPPERO informed CC-1 that COPPERO had been approached by the FBI and that COPPERO was obligated to appear at a proceeding the next day to answer questions regarding the insider trading scheme. Also during the call, COPPERO and CC-1 discussed and agreed upon the false statements that COPPERO was to provide to law enforcement authorities if questioned. CC-1 also told COPPERO that he reviewed his emails and had identified certain incriminating emails to or from COPPERO's personal email account. Earlier that evening, COPPERO had deleted emails from his personal account relating to the insider trading scheme being investigated by the federal grand jury and informed CC-1 during their call that he had deleted those emails.

## Statutory Allegation

30. On or about September 30, 2014, in the Southern District of New York and elsewhere, NINO COPPERO DEL VALLE, the defendant, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Title 18, United States Code, Section 1512(c)(2).

31. It was a part and an object of said conspiracy that NINO COPPERO DEL VALLE, the defendant, CC-1, and others known and unknown, willfully, knowingly, and corruptly would and did obstruct, influence, and impede an official proceeding, to wit,

- 13 -

a proceeding before a federal grand jury in the Southern
District of New York, and attempt to do so, by, among other
things, agreeing on a false cover story that COPPERO was to
utilize if questioned about the insider trading conduct under
investigation.

(Title 18, United States Code, Section 1512(k).)

### FORFEITURE ALLEGATION WITH RESPECT
### TO COUNTS ONE AND TWO

32.  As the result of committing one or more of the
offenses charged in Counts One and Two of this Information, NINO
COPPERO DEL VALLE, the defendant, shall forfeit to the United
States, pursuant to Title 18, United States Code, Section
981(a)(1)(C) and Title 28, United States Code, Section 2461, all
property, real and personal, that constitutes or is derived from
proceeds traceable to the commission of those offenses, and all
property traceable to such property.

### FORFEITURE ALLEGATION WITH RESPECT
### TO COUNTS ONE AND THREE

33.  As the result of committing one or more of the
offenses charged in Counts One and Three of this Information,
NINO COPPERO DEL VALLE, the defendant, shall forfeit to the
United States, pursuant to Title 18, United States Code, Section
982(a)(1), all property, real and personal, involved in such
offenses, and all property traceable to such property.

- 14 -

## Substitute Asset Provision

34. If any of the above-described forfeitable property in Paragraphs 32 and 33, as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1); Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461.)

*Preet Bharara*

PREET BHARARA
United States Attorney

- 15 -

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

-v.-

**NINO COPPERO DEL VALLE,**

Defendant.

**INFORMATION**

15 Cr.

(15 U.S.C. §§ 78j(b), 78n(e) and
78ff; 17 C.F.R. §§ 240.10b-5,
240.10b5-2, 240.14e-3(a) and
240.14e-3(d); 18 U.S.C. §§ 2, 371,
1512, and 1956)

PREET BHARARA
United States Attorney.